# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-CV-61067-RUIZ/STRAUSS

**CARLOS ANTWON ROBINSON,**

      Plaintiff,

v.

**OFFICER EDUARDO J. REQUEJO, *et al.*,**

      Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendants' Motion for Final Summary Judgment ("Motion") [DE 23]. The Motion was referred to me to take all necessary and proper action as required by law [DE 31]. I have reviewed the Motion, the Response [DE 26] and Reply [DE 29] thereto, all other summary judgment materials, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 23] be **DENIED**.

## BACKGROUND

On June 14, 2016, Defendants, Officer Requejo and Officer Good, joined a police pursuit of a vehicle reportedly stolen from a Mercedes Benz dealership. Defendants' Statement of Facts in Support of Their Motion for Final Summary Judgment ("DEF Stmt.") [DE 22] ¶¶ 2-3 (undisputed). The vehicle was traveling at a speed of over 120 MPH. *Id.* ¶ 2 (undisputed). Eventually, the vehicle crashed near a Walmart parking lot. Complaint [DE 1] ¶ 10; Answer [DE 12] ¶ 10. Plaintiff fled from the vehicle. Deposition of Officer Eduardo J. Requejo ("Requejo Depo.") [DE 21-2] at 30.

Based upon "the totality of the circumstances," and in light of Plaintiff's "felonious activities (i.e., theft of the vehicle, high speed chase, refusal to stop in view of lights and sirens and fleeing from the stolen vehicle to avoid capture), Officer Requejo deployed [his canine partner] Bero upon arrival at the crash site to detect a human scent." DEF Stmt. ¶¶ 7-8 (undisputed). "Bero immediately alerted to fresh human scent and continued tracking from the driver's side door of the stolen vehicle to" bushes where Plaintiff hid from police. *Id.* ¶ 9.

While tracking Plaintiff, the officers were approached by two witnesses. Requejo Depo. at 40. The first individual (whose name is not known) informed the officers that a male was "running with an object in his hands, possibly a gun." *Id.* at 40-41. *See also* Deposition of Erik N. Good ("Good Depo.") [DE 21-3] at 19. As it turned out, though, Plaintiff was not armed. Good Depo. at 57. The first witness also pointed in the direction where he observed Plaintiff running – the same direction in which Officer Requejo and Bero were tracking Plaintiff. DEF Stmt. ¶ 11 (undisputed).

The second witness, Hussein Mansour ("Mansour"), heard the crash occur while sitting in his vehicle in the Walmart parking lot. DEF Stmt. ¶ 6 (undisputed). Following the crash, he observed Plaintiff running towards his vehicle. *Id.* According to Mansour, Plaintiff attempted to get into Mansour's vehicle by throwing himself through an open window. Deposition of Hussein J. Mansour ("Mansour Depo.") [DE 21-4] at 13-14. Plaintiff, however, disputes attempting to climb into Mansour's vehicle. Deposition of Carlos A. Robinson ("PL Depo.") [DE 21-5] at 62-63. When Mansour would not let Plaintiff into the vehicle, Plaintiff ran into the bushes in front of the car. Mansour Depo. at 13-14. Nonetheless, Plaintiff's attempt to enter Mansour's vehicle scared Mansour and caused him to fear for his life. *Id.* at 16, 36-37. He did not know if Plaintiff had a weapon and did not know what Plaintiff was attempting to do. *Id.* After his exchange with

Plaintiff, Mansour approached Officer Requejo, asserting that someone had tried to carjack his vehicle.  Requejo Depo. at 40.  Mansour also informed Officer Requejo that Plaintiff was hiding in the bushes in front of Mansour's vehicle.  DEF Stmt. ¶ 19 (undisputed).

While the material facts regarding the events leading up to the officers' apprehension of Plaintiff are largely undisputed (at least with respect to what the officers believed to be occurring in real time even if Plaintiff disputes what actually occurred), the parties tell different versions of what occurred once law enforcement caught up to Plaintiff in the area of the bushes by Mansour's vehicle.  As an initial matter, viewing the facts in the light most favorable to Plaintiff as the non-moving party, it is obvious Plaintiff suffered harm at the paws (and jaws) of Bero.  *See* Opponent's Statement of Material Facts ("PL Stmt.") [DE 25] ¶¶ 45-47;[1] [DE 21-1] at No. 9.  However, Defendants contend that the force used was reasonable because Plaintiff continued to hide in the bushes where law enforcement could not see Plaintiff's hands or the position of his hands or body (with law enforcement not knowing at the time whether Plaintiff was armed).  *See* DEF Stmt. ¶¶ 20, 24, 34 (disputed).  Additionally, Defendants contend that Plaintiff was given loud verbal commands to come out and surrender, with a warning that Bero would be sent in if Plaintiff did not surrender.  *Id.* ¶¶ 25-27 (disputed).  Once Bero was sent in (only after Plaintiff was given an opportunity to surrender),[2] Defendants assert that Plaintiff grabbed Bero by the neck and pushed him away.  *Id.* ¶ 28 (disputed).  After Bero gained control of Plaintiff, Defendants were still unable to obtain Plaintiff's compliance; therefore, Officer Good entered the bushes and struck Plaintiff's arm with a flashlight to gain Plaintiff's compliance (as Plaintiff was resisting arrest).  *Id.* ¶¶ 29-32

---

[1] I note that Defendants failed to reply to Plaintiff's additional facts as is required under Local Rule 56.1(a)(3) and (b)(3).

[2] Defendants assert they waited 15 seconds between command to surrender and release of Bero. *Id.* ¶ 26 (disputed).

(disputed).  Nevertheless, Defendants assert that Plaintiff never surrendered.  *Id.* ¶¶ 35-36 (disputed).

Plaintiff tells a materially different story.  Plaintiff says that the force applied, and harm inflicted, by Bero and Officer Good occurred only after Plaintiff voluntarily came out of the bushes to surrender to police, kneeled down on the ground, and put his hands up.  PL Stmt. ¶ 44; [DE 21-1] at No. 8.  Additionally, Plaintiff asserts that Officer Good repeatedly struck Plaintiff's head with a flashlight (not Plaintiff's arm).  [DE 21-1] at No. 8.  Aside from the versions offered by the parties, there is Mansour's version.  Like the officers, Mansour testified that Plaintiff had not surrendered, and that Plaintiff was still hiding in the bushes, when Bero was deployed.  Mansour Depo. at 28-30.  However, Mansour also testified that the force applied by Bero lasted for approximately three minutes.  *Id.* at 55, 69.

In light of the events that transpired, Plaintiff was arrested on six charges and convicted on three of those charges after pleading no contest.[3]  Separately, Plaintiff filed the two-count Complaint [DE 1] in this case against Defendants.  Count I is against Officer Requejo.  Count II is against Officer Good.  Both Counts assert claims under 42 U.S.C. § 1983, alleging that Defendants violated Plaintiff's Fourth and Fourteenth Amendment rights by using excessive force and unlawfully seizing Plaintiff.  As to Officer Requejo, Plaintiff alleges that Officer Requejo unlawfully seized Plaintiff via Bero.  *See, e.g.*, Complaint ¶ 42.  As to Officer Good, Plaintiff's

---

[3] *See* DEF Stmt. ¶ 1 (undisputed) ("On June 14, 2016, Plaintiff . . . was arrested and charged with: (1) Grand Theft of an Auto – First Degree, (2) Burglary of an Unoccupied Structure, (3) Aggravated Fleeing to Elude a Law Enforcement Officer, (4) Resisting an Officer without Violence, (5) Fleeing with Disregard of Safety to Person, and (6) Carjacking without Firearm or Weapon. [Plaintiff] pled no contest and was convicted of: (1) Grand Theft of an Auto – First Degree, (2) Burglary of an Unoccupied Structure, and (3) Aggravated Fleeing to Elude a Law Enforcement Officer.").

claim is premised on Officer Good's alleged failure to intervene (to stop Bero's use of force) and Officer Good's repeated striking of Plaintiff. *See id.* ¶¶ 21, 55, 61-62.

## **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) (citing *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (internal quotation marks omitted) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.* (citing *Celotex*, 477 U.S. at 322-23). *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (The movant may satisfy its burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case." (citing *Celotex*, 477 U.S. at 325)). Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311-12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson*, 477 U.S. 242). Nevertheless, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). Moreover, all reasonable doubts regarding the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation omitted).

## ANALYSIS

A genuine dispute of material fact exists and, thus, precludes the entry of summary judgment. While Defendants argue that their conduct did not amount to excessive force, and that even if it did, they are entitled to qualified immunity, Plaintiff's version of events, if credited by a reasonable jury, could result in the jury finding for Plaintiff.

## I.   EXCESSIVE FORCE

"The Fourth Amendment's freedom from unreasonable seizures includes the 'right to be free from the use of excessive force in the course of an arrest.'" *Hardigree v. Lofton*, 992 F.3d 1216, 1231 (11th Cir. 2021) (citation omitted). Therefore, Plaintiff's claims, which stem from excessive force allegedly used in the course of an arrest, are analyzed under the Fourth Amendment. *See Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) ("[U]nder the Supreme

6

Court's current framework, the Fourth Amendment covers arrestees, the Eighth Amendment covers prisoners, and the Fourteenth Amendment covers 'those who exist in the in-between— pretrial detainees.'" (citation omitted)).  Specifically, the Court must evaluate Plaintiff's claims under the Fourth Amendment's "objective reasonableness" standard.  *Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017) (citing *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009)).  That standard requires the Court to consider "whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Id.* (citation omitted).  In doing so, the Court must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Significantly, "officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Hardigree*, 992 F.3d at 1232 (quoting *Graham*, 490 U.S. at 397).

Determining whether the force used was reasonable requires carefully balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 1231 (quoting *Graham*, 490 U.S. at 396).  Making such a determination entails consideration of various factors including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396).  "[O]ther considerations include '(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously and sadistically.'" *Crenshaw*, 556 F.3d at 1290 (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008)).

Here, if a jury believes Plaintiff's version of events, it could return a verdict for Plaintiff. As discussed above, Plaintiff paints a picture where he came out of the bushes and surrendered with his hands up and his knees on the ground. It was only after he did so that Bero was sent after him and attacked him. Similarly, in Plaintiff's telling, Officer Good's use of force followed Plaintiff's alleged surrender. Looking to the applicable factors, the first factor weighs in favor of Defendants because the crimes at issue were obviously severe. *See supra* note 3. However, the remaining factors favor Plaintiff (accepting his version of events as true). As to the second factor, although Plaintiff posed an immediate threat to the safety of others during the course of the police chase and up until he surrendered, he no longer posed such a threat (at least not a major threat) when he allegedly surrendered in plain view. Although Defendants had reason to believe Plaintiff may be armed at the time, any threat would have been minimal if Plaintiff had kneeled down on the ground with his hands up as he contends. With respect to the third factor, although Plaintiff actively resisted arrest prior to his alleged surrender, such resistance ceased at the time of his surrender. As to the remaining factors, there was no need for the application of force once Plaintiff surrendered in the manner he asserts. Thus, the amount of force applied was certainly excessive in light of Plaintiff's version of events, as was the extent of the injury inflicted. Further, if Plaintiff surrendered in the manner he claims he did, and if Defendants could in fact see Plaintiff surrender as Plaintiff implies,[4] then it would be difficult to conclude that the force was applied in good faith. Therefore, a jury could certainly find for Plaintiff if it credits his testimony.

---

[4] It is unclear how dark or light it was outside at the time of the incident. The alleged surrender likely occurred after 6:00 a.m. but before 7:00 a.m. Officer Requejo testified that he did not become involved in pursuing Plaintiff until around 5:40 a.m. or 5:50 a.m. Requejo Depo. at 41-42. Plaintiff testified that it was around 6:00 a.m. or 7:00 a.m. when he surrendered and that "[i]t was like sunrise but you could see" (albeit not into the bushes). PL Depo. 49, 72. Though Officer Good testified it was dark outside, Good Depo. at 25, accepting Plaintiff's testimony as true and drawing reasonable inferences in his favor tends to establish that it was at least somewhat light.

The real dispute here concerns whether the Court can disregard Plaintiff's version of events, something Defendants seek to have the Court do.  That is because Defendants' version of events, which is completely contrary to Plaintiff's "surrender" version, would clearly justify the entry of summary judgment in Defendants' favor (Plaintiff does not argue otherwise).  However, disregarding Plaintiff's version of events would be tantamount to rendering an improper credibility determination at a stage where the Court must accept Plaintiff's testimony and sworn statements as true.  *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)); *Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) ("Summary judgment is not a time for fact-finding; that task is reserved for trial. Rather, on summary judgment, the district court must accept as fact all allegations the non-moving party makes, provided they are sufficiently supported by evidence of record. So when competing narratives emerge on key events, courts are not at liberty to pick which side they think is more credible. Indeed, if 'the only issue is one of credibility,' the issue is factual, and a court cannot grant summary judgment." (internal citations omitted)).

In attempting to convince the Court to disregard Plaintiff's version, Defendants note the Supreme Court's holding that "[w]hen opposing parties tell two different stories, one of which is *blatantly contradicted* by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott*

---

Moreover, the incident occurred in June, a month in which daylight lasts for longer than in nearly every other month.  Thus, it is reasonable to infer that, based on the time of day, it was at least somewhat light outside when the incident occurred.

*v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added).  But the record does not blatantly contradict Plaintiff's story.  To be sure, there is more evidence to support Defendants' version.  The only non-party eyewitness, Mansour, testified, like Defendants, that Plaintiff had not surrendered, and was still hiding in the bushes, when Bero was dispatched.  However, simply because it is two against one, and simply because Defendants' version may appear to be more believable, does not mean that the type of blatant contradiction discussed in *Scott* exists.  In fact, in *Scott*, the record evidence that blatantly contradicted one side's story was a *videotape* that the Supreme Court found "quite clearly contradict[ed] the version of the story."  *Id.* at 378.  Based on the video evidence, the Supreme Court determined that the version was "so utterly discredited by the record that no reasonable jury could have believed" it.  *Id.* at 380.  But no such video evidence or other evidence to blatantly contradict Plaintiff's version is present in this case.[5]  Therefore, the factual dispute regarding whether Plaintiff had surrendered, with his knees down and hands up, at the time force was applied, makes the issue of whether a constitutional violation occurred a jury issue.

The resolution of this factual dispute will not only resolve Plaintiff's claim against Officer Requejo (for the use of force applied via Bero), but it will also resolve Plaintiff's claim against Officer Good for failing to intervene and for separately applying force.  With respect to Officer Good's use of force (repeatedly hitting Plaintiff's head with a flashlight), it would not have been reasonable – based on the factors discussed above – in light of Plaintiff's alleged surrender.  As to the issue of failing to intervene, "[a]n officer who is present at the scene and who fails to take

---

[5] *Cf. Chatman v. Ft. Lauderdale Police Dep't*, 688 F. App'x 870, 874 (11th Cir. 2017) ("Here, we cannot say that Chatman's testimony about the duration of the dog bite is 'blatantly contradicted' by the medical and photographic evidence such that no reasonable jury could believe that testimony.  Unlike the video evidence at issue in *Scott*, the medical and photographic evidence in this case does not conclusively establish how long the dog bite continued after Chatman's full surrender.").  *See also Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (distinguishing *Scott*).

reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Crenshaw*, 556 F.3d at 1293-94 (quoting *Hadley*, 526 F.3d at 1330). "However, 'it must also be true that the non-intervening officer was in a position to intervene yet failed to do so.'" *Id.* at 1294 (quoting *Hadley*, 526 F.3d at 1330). Here, given that Officer Good applied force while Bero continued to apply force would mean that Officer Good was in a position to intervene. Thus, if a jury were to find excessive force on the part of Bero, it could also find for Plaintiff on his failure-to-intervene claim against Officer Good.

## II.   QUALIFIED IMMUNITY

Defendants' contention that they are entitled to qualified immunity also turns on the resolution of the factual dispute discussed above regarding Plaintiff's alleged surrender. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority." *Jones*, 857 F.3d at 851 (citing *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013)). An officer acts within the scope of his discretionary authority when his actions "(1) [are] undertaken pursuant to the performance of his duties, and (2) [are] within the scope of his authority." *Id.* (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)). Because Defendants "engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions," *id.*, they were acting within the scope of their discretionary authority. Plaintiff does not contend otherwise. As Defendants were acting within the scope of their discretionary authority, the burden shifts to Plaintiff to show that qualified immunity is inappropriate. *Id.*

To satisfy his burden, Plaintiff must show both that Defendants violated a constitutional right and that the right was "clearly established" at the time the violation occurred. *Id.*; *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012). As discussed in the prior section, a reasonable jury could find that Defendants violated Plaintiff's rights under the Fourth Amendment if it finds Plaintiff's version of events to be more believable. Because the constitutional right at issue was "clearly established" when the violation occurred, the Motion should be denied.

In determining whether the law was clearly established at the time of the violation, courts look to see whether there was "fair warning" at the time that the subject conduct occurred. *Jones*, 857 F.3d at 851 (citing *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011)). Fair warning or fair notice generally exists in the form of binding case law making it clear to reasonable officials in the defendant's place that his conduct violates federal law. *Id.* (citing *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 (11th Cir. 2000)). However, there are three separate ways in which a plaintiff may satisfy his burden here. First, he may point to "materially similar" binding precedent. *Id.* at 852 (citing *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012)). Under this approach, courts consider "whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case." *Id.* (citing *Loftus*, 690 F.3d at 1204). "Second, a plaintiff may invoke a 'broader, clearly established principle' that he asserts 'should control the novel facts [of the] situation.'" *Id.* (citing *Loftus*, 690 F.3d at 1204-05). Third, "a right is 'clearly established' when the defendant's conduct 'lies so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Id.* (quoting *Loftus*, 690 F.3d at 1205). "Similarly, [courts] recognize the obvious-clarity exception where conduct is 'so bad that case law is not needed to establish that the conduct cannot be lawful.'" *Id.*

(quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002)).   Nevertheless, this final category is narrow.  *Id.*

Here, accepting Plaintiff's version of events as true (as the Court must) reveals the violation of a "clearly established" right.  To the extent that relevant binding precedent does not demonstrate a clearly established right,[6] Plaintiff's extreme version of events is sufficient to satisfy the narrow third category set forth above, as Defendants have essentially acknowledged.  *See* Requejo Depo. at 79-82; Good Depo. at 45-47.  *See also* PL Stmt. ¶¶ 50-51.[7]  Specifically, although testifying that Plaintiff's version was false, when asked if it would violate Plaintiff's constitutional rights to allow Bero to bite Plaintiff if Plaintiff had surrendered with his knees on the ground and hands in the air, Officer Requejo answered affirmatively.   Requejo Depo. at 79-81.   Officer Requejo further testified that "[i]f somebody is surrendering in all forms and exhibiting a behavior that is consistent with surrendering, any type of use of force would be unconstitutional."  *Id.* at 81.  Similarly, although Officer Good also disputed Plaintiff's version of events, he likewise testified that it would violate one's constitutional rights if an officer allows his dog to bite the arrestee who has surrendered with his knees on the ground and hands in the air.  Good Depo. at 45-46.  Additionally, assuming Plaintiff's version of events, Officer Good testified he would have been obligated to intervene.  *Id.* at 46.  Moreover, Officer Good acknowledged that his alleged flashlight striking under the circumstances described by Plaintiff would have been unconstitutional.  *Id.* at 47.  Thus, the "unlawfulness of the conduct" described by Plaintiff was "readily apparent" to Defendants.  *See Jones*, 857 F.3d at 852.

---

[6] Relevant precedent at the time of the incident in this case would have included *Priester*, *Crenshaw*, and *Edwards* (but not *Jones*, which was decided the following year).

[7] As noted above, Defendants failed to reply to Plaintiff's additional facts as required.

Even without Defendants' acknowledgements, it should be readily apparent to any reasonable officer that an officer's conduct is unconstitutional when that officer commands his police canine to attack someone being arrested *after* that person has visibly surrendered with his hands up and knees on the ground, regardless of the crime committed. Permitting a three-minute canine attack to follow in such a situation, and applying additional force with a flashlight, when the suspect has clearly surrendered and is not resisting would only add insult to injury. But whether the extreme version presented by Plaintiff depicts what actually occurred in this case is disputed and, therefore, is for a jury to decide.

## **CONCLUSION**

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** the Motion [DE 23].

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 10th day of June 2021.

Jared M. Strauss
**United States Magistrate Judge**